**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION**

| | | |
|---|---|---|
| TAMARA COZART, individually and on behalf of all others similarly situated, | ) ) | **ELECTRONICALLY FILED** |
| | ) | **Case No.: 5:21-cv-00217** |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| RDU GOLF & TRAVEL LLC dba PURE GOLD, a North Carolina Limited Liability Company; DOUGLAS ADKINS, an individual; DOE MANAGERS  1 through 3; and, DOES 4 through 10, inclusive, | ) ) ) ) ) | |
| Defendants. | ) ) ) ) ) ) | |

---

**PLAINTIFF'S NOTICE AND UNOPPOSED MOTION TO LIFT STAY AND
APPROVAL OF FLSA SETTLEMENT**

---

**TO THIS COURT AND ALL PARTIES AND THEIR ATTORNEYS OF
RECORD**:

**PLEASE TAKE NOTICE** that on December 6, 2022, Plaintiff Tamara ("Plaintiff"), by and through undersigned counsel, hereby requests the following relief: (1) a lift of the stay for arbitration and; (2) approval of the settlement agreement (hereafter the "Settlement Agreement" or "Agreement") reached between Plaintiff and Defendants RDU Golf & Travel, LLC dba Pure Gold, and Douglas Adkins (hereafter, collectively "Defendants").

///

///

///

///

The Agreement is attached as Exhibit 1 to the Declaration of John P. Kristensen, filed concurrently with this Motion. *See* Declaration of John P. Kristensen ("Kristensen Decl.") ¶ 21, Exhibits ("Exs.") 1. Plaintiff further submits to this Court that it should approve the Settlement Agreement for the reasons described in the Memorandum of Points and Authorities. Defendants do not oppose this Motion.

Dated: December 6, 2022

Respectfully submitted,

**CARPENTER & ZUCKERMAN**

*/s/ John P. Kristensen*

John P. Kristensen
California Bar No. 224132
(*Pro Hac Vice*)
**CARPENTER & ZUCKERMAN**
8827 W. Olympic Boulevard
Beverly Hills, California 90211
*kristensen@cz.law*

Randall J. Phillips
**CHARLES G. MONNETT, III & ASSOCIATES**
6482 Carnegie Boulevard
Suite 100
Charlotte, North Carolina 28211
*rphillips@carolinalaw.com*

***Attorneys for Plaintiff***

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

**I.    INTRODUCTION AND PROCEDURAL HISTORY**

Plaintiff Tamara Cozart ("Cozart") worked as an exotic dancer at Defendants RDU Golf & Travel, LLC dba Pure Gold, and Douglas Adkins club, Pure Gold. *See* Declaration of John P. Kristensen ("Kristensen Decl.") ¶ 22.

Plaintiff Cozart filed the operative Complaint on May 11, 2021. *See* Dkt. 1. *See* Kristensen Decl. ¶ 23.

On September 21, 2021, Plaintiff and Defendants filed a Joint Motion to Stay Proceedings Pending Arbitration. *See* Dkt. 9. *See* Kristensen Decl. ¶ 24.

On September 22, 2021, this Court granted the Parties' Joint Motion to Stay Proceeding Pending Arbitration. *See* Dkt. 10. Following this Court's Order, the Parties engaged in the process of selecting arbitrators. However, before arbitration proceedings formally began, the Parties reached the resolution as described in the Agreement.  The Parties now seek this Court's approval of the Agreement. *Id.*

**II.    FACTUAL BACKGROUND**

Plaintiff was an exotic dancer at Defendants club, Pure Gold, within the three (3) years prior to the filing of the lawsuit. Plaintiff alleges she was misclassified as an independent contractor and was therefore owed wages due to that misclassification. *See* Kristensen Decl. ¶ 25.

Defendants owned and operated the adult-oriented entertainment facility Pure Gold, where Plaintiff worked, located at 301 North Harrison Avenue, Unit A, Cary, North Carolina 27513. The individual owner of the club is/was Douglas Adkins. *Id.*

**III.    LEGAL GROUNDS FOR PLAINTIFF'S CLAIMS**

Plaintiff alleged the following causes of action: (1) Failure to Pay Minimum Wage, 29 U.S.C. § 206; (2) Failure to Pay Overtime Wages, 29 U.S.C. § 207; (3) Illegal Kickbacks, 29 C.F.R. § 531.35; (4) Unlawful Taking of Tips, 29 U.S.C. § 203; and (5) Forced Tipping, 29 C.F.R. § 531.35. *See* Dkt. 1; *see also* Kristensen Decl. ¶ 26.

Further, Plaintiff categorized her damage claims into three (3) distinct categories. The first type of damage claims related to Defendants' failure to pay minimum wages pursuant to the FLSA 29 U.S.C. § 206, and failure to pay overtime wages pursuant to 29 U.S.C. § 207. The other damage claim under these legal grounds, related to Plaintiff's contention that Defendants required her to "tip-out" unlawfully and at Plaintiff's own expense. Plaintiff's claims addressed two (2) types of tipping violations. Plaintiff alleged that the dancers were "encouraged" to tip DJs, managers, and security. Plaintiff argued that this constituted a forced subsidization of Defendants' club, which represented unlawful "kickbacks" in violation of 29 U.S.C. § 203. Plaintiff further contended that this forced tipping was a violation of 29 C.F.R. § 531.35, which resulted in the dancers subsidizing the clubs' payment of wages to other underpaid club employees. *See* Kristensen Decl. ¶ 27.

The second form of tipping violations, for which Plaintiff claimed damages, was that Defendants retained private dance fees, rather than paying them out to Plaintiff. Defendants maintained that these charged fees belonged to them. Plaintiff, however, alleges that these tips were improperly taken from her. *See* Kristensen Decl. ¶ 28.

Lastly, Plaintiff claims that Defendants forced her to pay "house fees" merely for the ability to work at Pure Gold. Plaintiff maintains that she was required to pay these fees to Defendants' at each shift, in violation of 29 C.F.R. § 531.35. *See* Kristensen Decl. ¶ 29.

Thus, when Plaintiff ultimately resolved this matter, there were five separate claims, maintained by each dancer, the damage calculation of which went into the valuation of her respective claims. Furthermore, there was substantial debate between the Parties regarding the number of shifts and dates each dancer worked. *See* Kristensen Decl. ¶ 30. Defendants disagreed with Plaintiff's factual assertions. *See* Kristensen Decl. ¶ 31.

## IV. THE SETTLEMENT AGREEMENT

Under the Agreement, Defendants have agreed to pay Plaintiff a settlement in the amount of $24,000.00 for her damages claims. Importantly for this Court's consideration is that the respective settlement is well within the ranges for approval. Pursuant to the Agreement,

Defendants have agreed to pay Plaintiff a gross settlement, which when attorneys' fees and costs, are properly allocated, will allow Plaintiff to receive a net recovery well within the range of her respective damages. *See* Kristensen Decl. ¶ 32-33.

As reflected below, Plaintiff's allocation is entirely in line with her estimated damages. Her recovery, therefore, constitutes a full satisfaction of her claims.

The allocation of Plaintiff's settlement is as follows:

| PLAINTIFF | GROSS SETTLEMENT AMOUNT | CASE COSTS | ATTORNEY'S FEES | NET SETTLEMENT TO CLIENT |
|---|---|---|---|---|
| Cozart | $24,000.00 | $886.82 | $9,113.18 | $14,000.00 |
| **TOTAL** | **$24,000.00** | **$886.82** | **$9,113.18** | **$14,000.00** |

*See* Kristensen Decl. ¶ 34, Exs. 1.

### A. *Plaintiff Cozart's Damage Claim and Recovery*

Cozart worked at Pure Gold from January 7, 2019 to approximately April 4, 2019. Cozart worked approximately 284.41 hours for a total of 38 total shifts. Cozart's damage claim for her minimum wage claims is approximately $4,123.95. Further, Cozart asserts that she was forced to tip-out at least $75 dollars at the end of each shift, totaling a forced tip-out damage calculation of approximately $2,850.00 in total during her time at Pure Gold. Similarly, given that Cozart was charged a house fee of at least $100 at the end of each shift, Cozart was further forced to pay approximately $3,800.00 in house fees. Thus, Cozart's possible range of recovery lies at approximately $10,773.95 in total for the alleged claims against Defendants in this matter. *See* Kristensen Decl. ¶ 35.

Pursuant to her settlement agreement, Cozart is set to receive a net settlement amount of $14,000.00 a recovery which exceeds all her projected range of damages. Given that Plaintiff's individual records were decidedly weaker than those retained by Defendants, the below calculations were made and the factors therein played a role in weighing the value of each claim. *See* Kristensen Decl. ¶ 36.

The below table accurately illustrates the above-referenced numbers, which are estimated as follows:

| | |
|---|---|
| Minimum Wages (Liquidated): | $4,123.95 |
| House Fees: | $3,800.00 |
| Forced Tip-Outs: | $2,850.00 |
| **Total Loss:** | **$10,773.95** |

*See* Kristensen Decl. ¶ 36, Exs. 1.

Cozart's net settlement amount of $14,000.00 is within her reasonable range of recovery under the claims for this action, and one that was agreed to by Cozart and Defendants. Plaintiff did not have strong records of the dates or the amount of shifts she worked. On the contrary, Defendants wherein provided substantial records of the minutes Cozart worked, the disbursements made by Cozart at the end of her shifts, and her attended work period throughout the time period she worked at Pure Gold. *See* Kristensen Decl. ¶ 37.

Plaintiff's counsel litigated this case extensively in Court and in arbitration. The above settlement amount is significant in that it takes into account the amount of time litigated, the ability to reach resolution, and further the ability to collect. These factors are decidedly relevant in the settlement negotiations and ultimate resolutions, particularly in light of the currently unknown economic environment. *See* Kristensen Decl. ¶ 38.

### B. Consideration in Exchange for Settlement

In exchange for the consideration described above, Plaintiff has agreed to dismiss her claims related to any alleged violations of the FLSA, and any state wage and hour claims stemming from Plaintiff's employment with the Defendants. *See* Kristensen Decl. ¶ 39.

Furthermore, Plaintiff's counsel incurred $13,107.50 in fees and is recovering $886.82 in costs. Plaintiff's counsels have a lodestar of $13,994.02 and are requesting $9,113.18 in fees. Therefore, Counsel's lodestar is greater than the recovered amount for fees incurred. *See* Kristensen Decl. ¶ 40; Exs. 2-4.

## V. STANDARD FOR APPROVAL OF FLSA SETTLEMENTS

The Fourth Circuit has not established a firm criterion on the factors considered in determining whether an FLSA settlement warrants approval, however, District Courts in this Circuit have routinely followed the Eleventh Circuit's *Lynn's Food Stores* standard. *See Vazquez-Aguilar v. Gasca*, 513 F. Supp. 3d 675, 680 (E.D.N.C. 2021) (referencing *Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Labor, Employment, Standards Admin., Wage & Hour Div.*, 679 F.2d 1350, 1353 (11th Cir. 1982)).

Under *Lynn's Food*, a District Court may approve an FLSA settlement only if it reflects "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Taylor v. Progress Energy, Inc.*, 493 F.3d 454, 460 (4th Cir. 2007) (quoting *Lynn's Food Stores*, 679 F.2d at 1355). "If a settlement in an employee FLSA suit does not reflect reasonable compromise over issues, such as FLSA coverage or computation of back wages that are actually in dispute; we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation." *Lynn's Food Stores*, 679 F.2d at 1354. Accordingly, FLSA settlements require the supervision of the Secretary of Labor or the district court. *See Lynn's Food Stores*, 679 F.2d at 1352-53. The FLSA also requires that a settlement agreement include an award of reasonable fees. *See* 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action").

Further, "when employees bring a private action for back wages under the [FLSA], and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." *Lynn's Food Stores*, 679 F.2d at 1353.

Thus, under the *Lynn's Food Stores* standard, consistently used and implemented in this Circuit, District Courts must consider the following factors when deciding whether settlements warrant approval: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, risk, expenses, and likely duration of the litigation; (3) the stage of the proceedings; and the amount of discovery completed; (4) the strength of Plaintiffs' case and the probability of

Plaintiffs' success on the merits; (5) the range of possible recovery; (6) the opinions of the counsel; and (7) the public interest. *See Robinson v. Harrison Transportation Servs. Inc.*, No.5:15-CV-298-F, 2016 WL 3647616, at *1 (E.D.N.C. June 30, 2016); *see also Patel v. Barto*, 15 F. Supp. 3d 648, 656 (E.D. Va. 2014).

When considering these factors, the Court should keep in mind the "strong presumption in favor of finding a settlement fair." *See Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977). Moreover, "a settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution." *See In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 806 (3rd Cir. 1995) (other internal citations omitted). As discussed below, those factors strongly favor approval of these settlements. Each factor is discussed individually for this Courts consideration in deciding for approval of the above-described settlements.

## VI.    APPROVAL OF THE FLSA SETTLEMENTS

### A. *Bona Fide Dispute*

When deciding whether there is a bona fide dispute as to a defendant's liability under the FLSA, courts consider the pleadings and the proposed settlement agreement. *See Hall v. Higher One Machs. Inc.*, No. 5-15-CV-670-F, 2016 WL 5416582, at *6 (E.D.N.C. Sept. 26, 2016) (citing *Lynn's Food Stores*, 679 F.2d at 1354). Evidence of a bona fide dispute may be established by the parties' motion, the pleadings, and the representations in the settlement agreement. *Gorrell v. Wake Cnty.*, No. 5:21-CV-00129-M, 2022 WL 3222003, at *2 (E.D.N.C. Aug. 9, 2022) (citing *Hall*, 2016 WL 5416582 at *6).

The Court should approve the Agreement because it reflects a reasonable compromise of *bona fide* disputes regarding both Defendants' alleged FLSA liability, and Plaintiff's damage claims. There was no collusion in reaching the Agreement. The Parties were adequately represented by competent counsel experienced in litigating cases under the FLSA, and the Agreement reached was the result of good-faith, arms' length negotiation between the Parties. Counsel for Plaintiff, Mr. Kristensen, has tried multiple employment cases, particularly dealing with the FLSA, and obtained substantial settlements against employers, including against another

exotic dance club in excess of a million dollars. Mr. Kristensen has also settled in excess of fifty individual FLSA claims against strip clubs in the past two years, including during the COVID-19 pandemic. *See* Kristensen Decl. ¶¶ 2-20, 41-59 Exs. 5—23.

Further, the Parties have strenuously different opinions about the classification of the dancers as employees or independent contractors. They maintain that disagreement as to whether the "dance fees" charged by and collected by the Defendants belonged to them or whether they were, in actuality, tips belonging to Plaintiff. The Parties' counsel were cognizant of the other's arguments and positions as they pertained to employee classifications. Furthermore, the Parties participated in settlement negotiations in good-faith. The Parties defended their positions about the disputed aspects of the case and ultimately, an amicable resolution was reached.

Because the Parties disputed foundational aspects of the case, the purpose of the bona fide dispute requirement, used by Courts in this Circuit, has clearly been satisfied here *See Gorrell*, 2022 WL 3222003, at *3 (referencing *Lynn's Food Stores*, 679 F.2d at 1353) ("The purpose of this analysis is to ensure that an employee does not waive claims for wages, overtime, compensation, or liquidated damages when no actual dispute exists between the parties.")

### B. *Fair and Reasonable Resolution*

Although the Fourth Circuit has not directly addressed the relevant factors the court should consider when determining whether a FLSA action settlement is fair and reasonable, courts within this district have considered several factors when evaluating a settlement's fairness and reasonableness, including: the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense, and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the opinions of class counsel and class members after receiving notice of the settlement, whether expressed directly or through failure to object; and (6) the probability of plaintiffs' success on the merits and the amount of the settlement in relation to the potential recovery. *Gorrell*, 2022 WL 3222003, at *3 (referencing *Vazquez-Aguilar*, 513 F. Supp. 3d at 681). In no particular order, Plaintiff will address each of these factors accordingly.

### 1. Absence of Fraud or Collusion

When considering this factor, Courts look for indications that the plaintiffs' counsel "allowed the pursuit of their own self-interests and that of certain class members to infect the negotiation" or for "evidence of more 'subtle signs' of collusion, such as 'when counsel receives a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded." *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011). Importantly, "courts in this Circuit respect the integrity of counsel and presume the absence of fraud and collusion in negotiating the settlement, unless evidence of the contrary is offered." *Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 1:08-CV-1310, 2009 WL 3094955, at *16-17 (E.D. Va. Sept. 28, 2009).

The Agreement came about as the result of extensive pre-suit investigation, review of formal and informal discovery, zealous advocacy on both sides, and substantial arm's-length negotiations between counsel. While Plaintiff's counsel is receiving payment of reimbursable costs and attorneys' fees from the settlements, there is nothing out of the ordinary in this arrangement. Counsel is not receiving a disproportionate distribution of the settlement, nor is Counsel being amply rewarded while Plaintiffs forgo distribution. On the contrary, the settlement amount exceeds Plaintiff's entire damage claim calculation, and Counsel is receiving far less than their lodestar. *See Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 952 (7th Cir. 2006); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). The Parties' settlement is not a "clear sailing" arrangement and Plaintiff's counsel does not seek a separate payment for their fees apart from those delineated, and further approved by this Court, as a part of the gross settlement amount.

This factor, therefore, weighs in favor of approval.

### 2. The Stage of the Proceedings

Courts will approve an FLSA settlement wherein there is a significant risk that litigation could result in a lower recovery for the class or no recovery at all. *See Rodriguez v. W. Pub'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009); 4 A Conte & H. Newberg, *Newberg on Class Actions*,

§11:50 at 155 (4th ed. 2002). Several facts in this case potentially jeopardize Plaintiff's recovery should their claims proceed in arbitration, including Defendants' written employment policies and testimony from supervisors contradicting Plaintiff's claims, and Plaintiff's potential inability to prove Defendants' alleged violations were willful or their ability to corroborate the number of hours and shifts worked. Accordingly, further litigation might result in Plaintiff recovering less than the settlement, or perhaps nothing at all. The Parties possess an "adequate appreciation of the merits sufficient to warrant reasonable settlement negotiations" in such a way that to continue litigation of this matter would result in additional substantial expenses, such as the costs of numerous depositions, dispositive motions, and possible trial. *See Robinson*, 2016 WL 3647616 at *2.

This factor, therefore, weighs in favor of approval.

### 3. Extent of Discovery Conducted

Courts have held "formal discovery is not a necessary ticket to the bargaining table" where the parties have sufficient information to make an informed decision about settlement. *See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998); *In re Chicken Antitrust Litig.*, 669 F.2d 228, 241 (5th Cir. 1982).

The settlement is the result of extensive pre-suit investigation, review of formal and informal discovery, and substantial arm's-length negotiation between counsel. The Parties had a good enough understanding of the merits of their positions to "fairly evaluate the liability and financial aspects of [the] case" by the time counsel for The Parties began settlement negotiations. *See Robinson*, 2016 WL 3647616 at *2 (citing *Lomascolo*, 2009 WL 3094955, at *31). Ultimately, these negotiations lead to the settlement of the claims of this case.

This factor, therefore, weighs in favor of approval.

### 4. Success on the Merits

The FLSA structure was intentionally designed by Congress as a remedial measure to incentivize and encourage private attorneys to pursue lower damage wage and hour claims with clear liability. "[T]he FLSA is a uniquely protective statute," *Cheeks v. Freeport Pancake House*,

Inc., 796 F.3d 199, 207 (2d Cir. 2015), *cert. denied*, 136 S. Ct. 824 (2016), and its purposes "require that it be applied even to those who would decline its protections," *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 302 (1985). By awarding reasonable fees and costs to prevailing FLSA litigants, "Congress intended to encourage private citizen enforcement of the [FLSA]." *Soler v. G & U, Inc.*, 658 F.Supp. 1093, 1097 (S.D.N.Y. 1987). Indeed, "Plaintiffs' counsel's role as private attorneys general is key to the effective enforcement of these statutes." *Trinidad v. Pret a Manger (USA) Ltd.*, No. 12-cv-6094 (PAE), 2014 WL 4670870, at *12 (S.D.N.Y. Sept. 19, 2014).

Plaintiff's counsel anticipated that Plaintiff's damages, had the case proceeded to arbitration, to be in the upwards $10,000 range gross. Here, Plaintiff obtained an adequate compromise in recovery of that amount. Plaintiff did not have strong records of the dates or the amount of shifts she worked, nor of the amounts that she was forced to tip-out after each shift or charged as house fees by Defendants at the end of each shift. On the contrary, Defendants herein provided substantial records of the minutes Plaintiff worked, the disbursements made by Plaintiff at the end of her shifts, and her attended work shifts throughout the time period Plaintiff worked at Pure Gold. Therefore the above calculations were made considering all factors therein, which played a role in weighing the value of each claim.

Furthermore, this settlement is undoubtedly favorable for Plaintiff, in light of the work performed in the lawsuit and the juncture of the litigation at the time the settlement was reached, making the settlement amounts entirely reasonable. Counsel spent considerable time pursuing negotiations and preparing a settlement of the matter which is evidenced in their lodestar amount of $13,994.02. In spite of Plaintiff's counsel's skill, tenacity, and the potential of a large attorneys' fees award contributed to the overall settlement, Plaintiff's counsel is not asking for compensation for their entire lodestar. As such, this settlement is unequivocally favorable to Plaintiff and, in light of the work performed in the lawsuit and the juncture of the settlement in this litigation, the settlement amount is reasonable. *See* Kristensen Decl. ¶ 40.

This factor, therefore, weighs in favor of approval.

### 5. Experience of Plaintiff's Counsel

In determining whether a settlement is fair and reasonable, courts in this Circuit evaluate the opinion of counsel, counsel's evaluation of the reasonableness of the Agreement, and the recommendation to his client to accept as some evidence of the reasonableness of the settlement. *See Robinson*, 2016 WL 3647616, at *2 (citing *Devine v. City of Hampton*, 2015 WL 10793424, at *2 (Dec. 1, 2015)); *see also Lomascolo*, 2009 WL 3094955, at *10.

Plaintiff's counsel and Defendants' counsel have substantial experience litigating wage and hour cases and handling complex and class actions. Counsel for the Parties knew the strengths and weaknesses of the opposing side's case, as can be evidenced by the fully briefed motions before the Court. Plaintiff's counsel's substantial experience and judgment gave way to this Settlement. Additionally, Plaintiff has been made aware of the terms of the settlement and has signed the Agreement.

This factor, therefore, weighs in favor of approval.

### 6. Opinions of Class Members after Receiving Notice of the Settlement in Relation to the Potential Recovery.

Given the present matter is not a class action, nor a certified collective action, Plaintiff pursued her claims individually against Defendants. As such, there are no absent class or collective members whose reactions require consideration by this Court in evaluating the merits of this Motion.

This factor, therefore, weighs in favor of approval.

## VII. THE REQUEST FOR ATTORNEY'S FEES AND COSTS IS REASONABLE

### A. *FLSA Collective Action Settlements Allow for a Greater Recovery for Plaintiffs than Rule 23 Class Action Settlements.*

Plaintiff's request for attorneys' fees is reasonable and in line with many other district court orders granting similar fees in FLSA settlements. FLSA settlements are distinct from Rule 23 class action settlements and, as such, allow for a greater recovery of settlement awards for the plaintiffs involved. Several district judges around the country have granted similar requests for

attorneys' fees for Plaintiff's counsel within the last three years. *See* Kristensen Decl. ¶¶ 41-59; Exs. 5-23.

In Rule 23 class actions, attorneys often seek fees in excess of their lodestar by requesting that the court apply a positive modifier. *See In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 271 (D.N.H. 2007) (approving Rule 23 class action settlement with lodestar multiplied of 2.697); *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305-06 (3d Cir. 2005), *as amended* (Feb. 25, 2005) (approving a lodestar cross-check multiplier of 4.07); *See also Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050-51 (9th Cir. 2002). By contrast, here, Plaintiff's counsel merely seek a negative or inverse multiplier, resulting in an award less than their lodestar. *See* Kristensen Decl. ¶ 40; Exs. 2-4.

FLSA settlements are subject to a different standard and allow for a greater recovery of attorneys' fees than Rule 23 class action settlements in order to encourage attorneys to take on these sorts of wage-and-hour cases. *See Rembert v. A Plus Home Health Care Agency LLC*, 986 F.3d 613, 616-17 (6th Cir. 2021). Importantly, "neither the text, nor the purpose of the FLSA, supports a proportionality limit on recoverable attorneys' fees." *Rembert*, 986 F.3d at 617 (citing *Fisher v. SD Protection Inc.*, 948 F.3d 593, 603 (2d Cir. 2020)). If courts in FLSA cases capped the awardable fees at some percentage of that monetary value, many workers with valid FLSA claims "would be unable to 'attract competent counsel' to represent them." *Rembert*, 986 F.3d at 617 (citing *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004)).

Indeed, public policy encouraging attorneys to take on FLSA cases often results in situations where the attorney's fees surpass the Plaintiffs' award. *See Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994) (affirming attorney fees of $40,000 on a judgment of $7,680 for overtime compensation); *Posner*, 1985 WL 13108 at *2 (6th Cir. 1985) (upholding substantial awards of attorney's fees even though a plaintiff recovered only nominal damages); "In determining fee awards, courts should not 'become green-eyeshade accountants[,] but instead must content themselves with 'rough justice[.]' *See Carter v. Hickory Healthcare, Inc.*, 905 F.3d 963, 970 (6th Cir. 2018) (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011)). In this case, however,

Plaintiff's counsel merely seek an amount in fees totaling 45% of the total settlement, which is less than the lodestar amount. *See* Kristensen Decl. ¶ 40; Exs. 2-4.

          **i.**      **Plaintiff's Counsel Seeks Less Than Its Lodestar**

Plaintiff's attorneys seek an amount in fees totaling less than their lodestar of $13,994.02. *See* Kristensen Decl. ¶ 40; Exs. 2-4. Moreover, Plaintiff's attorneys' fees and costs do not surpass the net settlement Plaintiff will receive from Defendants. Plaintiff 's counsel has continuously sought, and courts have regularly approved, the application of a negative lodestar calculation multiplier in various FLSA settlements, that have been negotiated over the past two years. *See* Kristensen Decl. at ¶¶ 41-59, Exs. 5-23. Given Plaintiff is set to recover in excess of her estimated damage calculations, Plaintiff's counsel experience as a litigator in FLSA actions continuous yielded positive fruits to Plaintiff, that she otherwise would not have had she not pursued this matter with Plaintiff's counsel.

     **B.**  *Plaintiff's Attorneys' Fees Represent a Reduction of the Lodestar and Would Therefore Be a Reasonable Award*

It is well settled that a reasonable amount of fees is determined pursuant to the "lodestar approach," which involves calculating "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013); *see also Gay Officers Action League v. Puerto Rico*, 247 F.3d 288, 295 (1st Cir.2001) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)); *Gary v. Carbon Cycle Arizona LLC*, 398 F. Supp. 3d 468, 485 (D. Ariz. 2019) ("[t]o determine a reasonable attorneys' fee under FLSA, the Court uses the lodestar method."); *Mills v. Cabral*, No. CIV.A. 06-10133-RGS, 2010 WL 2553889, at *1 (D.Mass. June 18, 2010) ("[i]n determining an appropriate award of fees and costs under the FLSA, the court employs the lodestar approach."); *Marrotta v. Suffolk Cty.*, 726 F.Supp.2d 1, 25 (D.Mass. 2010) (approving FLSA attorneys' fees at lodestar amount).

Plaintiff's counsel took this case on a contingency fee basis while facing uncertainty as to whether any recovery would be achieved at Plaintiff's counsel's cost. Plaintiff's counsel spent considerable time and effort litigating these cases with the possibility of no recovery, which is

oftentimes common in contingency fee cases. It is widely known that some cases yield no recovery, while others generate a substantial recovery and even a positive multiplier on their lodestar.

Here, Plaintiff's Counsel incurred costs in the amount of $886.82 and attorney's fees of $13,107.50. *See* Kristensen Decl. ¶ 40; Exs. 2-4. The fact that Plaintiff's counsel's experience and time resulted in this extraordinary settlement emphasizes that the attorney's fees and costs here are reasonable and appropriate. *See Crabtree v, Volkert, Inc.,* No. 11-0529-WS-B, 2013 WL 593500, at *7-8 (S.D. Ala. Feb. 14, 2013) (approving an upward adjustment of the Plaintiff's counsel's lodestar amount given the contingency nature of the lawsuit, the merits of the case, and the settlement reached). In this case, Plaintiff's counsel's lodestar is of $13,994.02. *See* Kristensen Decl. ¶ 40; Exs. 2-4. However, Plaintiff's counsel is seeking $9,113.38 in fees, which is less than their lodestar and consists of 45% of the gross settlement. Even with such distribution, Plaintiff is still recovering in excess of her damage claim calculation. Thus, the proposed allocation of attorney's fees does not undermine the fairness or reasonableness of the amounts received by Plaintiff for purposes of this FLSA settlement.

The fees sought in this matter are commensurate with the time and effort exerted to achieve a favorable settlement and the overall skill of Plaintiff's attorneys. Plaintiff's counsel are well versed in both FLSA collective actions and Rule 23 class actions and have achieved numerous successful outcomes. Furthermore, Plaintiff's attorneys' hourly rates are reasonable and are similar to those approved by other district courts throughout this country.

In *Macklin v. Biscayne Holding Corp et al.*, 1:19-CV-00561-WES-PAS (D.R.I. 2019), Plaintiffs' counsel sought approval of a similar FLSA settlement involving the wage and hour claims of exotic dancers. *See* Kristensen Decl. at ¶¶ 41-59; Exs. 5-23. In the *Macklin* case, Plaintiffs' counsel sought a reduction of their lodestar and a fee award consisting of 45% of the settlement. *See id.* There, the Court found both the settlement and the attorney's fees and costs to be reasonable. Similarly, Plaintiff's counsel in this case is seeking a reduction of their lodestar which should be approved.

Also, while the lodestar amount is presumed to be a reasonable calculation of attorneys' fees, it is within this Court's discretion to adjust the lodestar figure. *See McAfee*, 738 F.3d at 88. Within the past two years alone, three separate judges in California have granted Plaintiffs' counsel's request to apply a negative modifier to the lodestar in order to achieve a fee award comprising of 45% of the total FLSA settlement. *See* Kristensen Decl. at ¶¶ 41-59, Exs. 7-25. District courts in Florida and Wisconsin have followed suit and also granted Plaintiffs' counsel attorney's fees. *See* Kristensen Decl. at ¶¶ 41-59, Exs. 13-16, 19-23.

Here, and as stated earlier, Plaintiff's counsel seek an amount less than their lodestar of $13,994.02. *See* Kristensen Decl. ¶ 40; Exs. 2-4. Moreover, Plaintiff's counsel's' fees and costs do not surpass the net settlement Plaintiff will receive from Defendants. Plaintiff's counsel has continuously sought, and courts have regularly approved, the application of a negative lodestar multiple in various FLSA settlements Plaintiff's counsel has negotiated over the past two years. *See* Kristensen Decl. at ¶¶ 41-59, Exs. 5-23. Plaintiff's counsel is doing the same in this case. Therefore, in light of their reasonable fee request under Fourth Circuit law, Plaintiff's counsel requests this Court approve their request for attorneys' fees in these settlement agreements.

///

///

///

///

///

///

///

///

///

///

///

///

## VIII.  CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant this Motion in its entirety.

Dated: December 6, 2022

*/s/ John P. Kristensen*

John P. Kristensen
California Bar No. 224132
(*Pro Hac Vice*)
**CARPENTER & ZUCKERMAN**
8827 W. Olympic Boulevard
Beverly Hills, California 90211
*kristensen@cz.law*

Randall J. Phillips
**CHARLES G. MONNETT, III & ASSOCIATES**
6482 Morrison Boulevard
Suite 100
Charlotte, North Carolina 28211
*rphillips@carolinalaw.com*

***Attorneys for Plaintiff***

## CERTIFICATE OF SERVICE

I certify that on Tuesday, December 06, 2022 a true and correct copy of the attached **PLAINTIFF'S NOTICE AND UNOPPOSED MOTION TO LIFT STAY AND APPROVAL OF FLSA SETTLEMENT** was served via CM/ECF upon the following parties pursuant to Rule 5 of the Federal Rules of Civil Procedure:


Joseph L. Ledford
THE LAW OFFICE OF JOSEPH L. LEDFORD
301 South McDowell Street
912 Cameron-Brown Building
Charlotte, North Carolina 28204
Email: josephlledford@yahoo.com

***Counsel for Defendants***


*/s/ John P. Kristensen*

John P. Kristensen